IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NATHANIEL WARREN,

        Plaintiff,

vs.                                            CIVIL NO.  12-838 CG/LFG

HIGH COUNTRY
TRANSPORTATION, INC.,

        Defendant.

## ORDER GRANTING MOTION FOR EXTENSION
## OF EXPERT DISCLOSURE DEADLINE

THIS MATTER is before the Court on Plaintiff Nathaniel Warren's ("Warren") "Motion for Partial Extension of Deadline for Expert Disclosure." [Doc. 31].  The Court considered the motion, Defendant's Response [Doc. 36], and Warren's Reply [Doc. 40].  Oral argument is not necessary.

### Background

Discovery in this case closes April 30, 2013. [Doc. 17.] On January 8, 2013, the presiding judge set this case for a pretrial conference on August 1, 2013, with a trial setting of August 12, 2013. [Doc. 22.]

The Court's original Scheduling Order [Doc. 17] set February 15, 2013 as the deadline for Warren's disclosure of experts and production of Rule 26 reports.  On January 30, 2013, Warren's counsel contacted Defendant via email requesting an extension of both parties' expert deadlines in the hope deposing the driver of the tractor-trailer before "either report is due." [Doc. 36-1.]  When Warren's counsel contacted defense counsel concerning an extension, Warren's counsel had identified only one expert, Mr. Rene Lujan, [*see* Joint Status Report ("JSR"), Doc. 12, at 4-6].[1]  Mr.

---

[1] Plaintiff also identified a number of medical care providers in the JSR, including Brian Rike, D.O., Markus Garard, M.D., and Jeffrey Fultz and/or Christanya Phillips, physical therapists. [Doc. 12, at 5.]

Lujan was the only Rule 26 report expert identified in Warren's initial disclosures, although Plaintiff identified the same medical care providers listed below in n.1 [Doc. 36-2]. In Warren's answers to interrogatories, which specifically asked about expert witnesses, Warren identified only Mr. Lujan. [Doc. 36-3.]

Defendant also notes that when Warren's counsel requested a 3-week extension for expert reports, the email communications discussed only one expert. For example, Warren's counsel used the phrase "my expert" as opposed to "my experts" and, when referring to the expert report, referred to "his report or "my report" rather than more than one expert report. Ultimately, Defendant did not object to Warren's request, based on its understanding that Warren sought the extension with respect to one expert report. The Court granted the extension of time for Warren to serve his report as well as an extension of time for Defendant to disclose its expert and file a report. [*See* Doc. 36, at 3.] Thus, the new revised expert deadline for Warren was March 8, 2013, and Defendant's expert deadline was extended to April 5, 2013. [Doc. 27 (text only entry).

On about February 6, 2013, Warren served second supplemental disclosures identifying, for the first time, a functional capacity expert, Kim Noyes ("Noyes"), PT. [Doc. 36-4.] As of that date, Warren had identified two proposed experts – Noyes and Mr. Lujan. In an email, dated March 7, 2013, the day before Warren's revised expert disclosure deadline, Warren's attorney stated he needed to move for an extension of one week for economist, Brian McDonald's ("McDonald") expert report. [Doc. 36-5.] The March 7 email correspondence noted that Warren's counsel intended to get Defendant "expert reports from Rene Lujan and from Pamela Bowman, the vocational expert," by the extended deadline of March 8. [Doc. 36, at 3; Doc. 36-5.] The Court was not provided with any documentation that Warren previously supplemented initial disclosures or discovery responses to add Bowman and McDonald as two more experts. Thus, the Court assumes

2

that Defendant learned on March 7, 2013, the day before the extended deadline, that Warren was using a total of four experts. Defendant opposed the request for the 7-day extension related to submission of McDonald's expert report. [Doc. 36-5.]

On March 8, 2013, Warren served Defendant with his Disclosures of Expert Witnesses, listing Lujan, Bowman, Noyes, and McDonald. That same day, Warren filed the present motion for partial extension for submission of expert reports. Warren's reasons for needing one more week to submit McDonald's expert report were that it depended, somewhat on Bowman's report, and Bowman's report could not be produced earlier because it depended on Warren undergoing the FCE with Noyes, which report was not received until February 28, 2013. Noyes could not complete her report until March 8, 2013, leaving no time for McDonald to review the case and prepare his report. [Doc. 31, at 2.] Thus, only McDonald's report was not produced by the amended disclosure deadline. Further, Warren states that only a three-day extension ultimately was necessary as McDonald's report was finished on the third working day after the extended deadline of March 8, 2013. [Doc. 40, at 2.]

## **Discussion**

Defendant feels it was "sandbagged." Its cooperation and willingness to approve the earlier request for extension of expert deadlines was garnered by the representation that Warren had only one expert, and that at no time did Warren disclose, until just prior to the disclosure deadline, that he had a total of four experts. Defendant further states that the record reflects that Warrant knew by at least October 11, 2012, that an FCE was necessary and yet delayed in scheduling the FCE. [Doc. 36, at 4; Doc. 36-7.]

Warren's counsel argues that Defendant unilaterally reached the wrong conclusion. and that one party's unilateral expectation or understanding of an agreed extension should not control the

3

outcome of this request. Warren asserts that once the expert deadline was initially extended, Warren relied on the extension to further develop the need for expert testimony. [Doc. 40, at 2.] Warren states that Plaintiff's counsel had been developing "expert testimony on other subjects, from the beginning of this case." [Doc. 40, at 6.] Counsel further contends that when the earlier extension was granted, Plaintiff's counsel determined that "more time would be useful for the expert reports regarding vocational impairment and wage loss as well." [Id.] According to Warren, "[n]o effort was made to conceal Plaintiff's intention to use experts on damages as well as experts on liability." Defendant did not ask about the possibility of other experts, and "[o]ther experts were simply not discussed." [Id.] Warren then argues that, based on discovery and conferences in the case, Defendant might have guessed Warren would use other experts. [Id., n.1.]

Warren neglects to acknowledge the fact that Defendant's erroneous conclusion that Warren sought the extension for purposes of one expert report was prompted by Warren's own representations in answers to interrogatories, the Joint Status Report, initial disclosures, and email communications. Warren provides no explanation why his supplemental disclosures did not list Bowman and McDonald, in addition to Noyes.

The Court does not condone such evasive conduct. Under the Creed of Professionalism of the New Mexico Bench and Bar, counsel must "voluntarily exchange information" as early as possible, act respectfully, and behave with dignity. Warren's conduct relating to his request for an extension for one report and then later identification of three additional expert witnesses amounts to blindsiding his opponent, who acted in the spirit of cooperation when agreeing to the extension. Furthermore, Warren's argument that "a new standard" would be developed if Defendant's position was adopted, where "everything a party might do during the extension period would have to be

declared in advance by the party proposing the extension," is disappointing and without any merit whatsoever.

Notwithstanding the Court's displeasure with what could be deemed "sharp" practice, it is clear that Warren disclosed experts and produced Fed. R. Civ. P. 26 expert reports by the extended deadline, except for McDonald's report that was produced three working days after the deadline. Even though Warren led Defendant to believe there was only one expert, as earlier noted, it is not until the expert disclosure deadline that Warren had to finally show his cards.

The Court considered refusing the request for the untimely production of McDonald's report, especially when there is a trial setting. This would have resulted in Warren not being permitted to use McDonald as an expert. However, Defendant failed to demonstrate or even argue that it was prejudiced by the three-day delay in receiving McDonald's report. For example, Defendant did not show that it had insufficient time to take McDonald's deposition within existing case management deadlines or that it was unable to name its own damages expert by the extended deadline.

For these reasons, the Court grants Warren's motion for extension of the expert deadline for purposes of permitting the late disclosure of McDonald's expert report. The Court advises counsel that it cannot extend any other discovery-related deadlines based on the trial setting in this case. Should the parties seek additional extensions of time for expert depositions or discovery, the parties will have first have to ask the presiding judge to vacate and reschedule the pretrial conference and trial setting.

　　　　　　　　　　　　　　　　　　　　*Lorenzo F. Garcia*
　　　　　　　　　　　　　　　　　　　　Lorenzo F. Garcia
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge